Good morning, Your Honors. I'm Robert Weems on behalf of Matt Ferrando. Mr. Ferrando first sought benefits in 2001, and his case has been working its way through for a decade. And it's not uncommon for people in his situation who have a combination of both physical and mental impairments. Well, he actually has benefits now, though, doesn't he? He does at this point, Your Honor, but there's this, you know, a large period in which he didn't, and at this economic level, that's significant. How significant is it? What are we looking at? About six years of benefits is what we think he's entitled to under a proper analysis. We think at minimum he's at least entitled to a remand in light of the finding by the third ALJ that he was disabled within one month, and relying upon the exact same evidence that was looked at in the second, by the second ALJ. But when the third one looked at it and determined that he should have it, it was an interval of at least 40 days, wasn't it? I'm sorry, Your Honor. I just, what, 40 days or? Yes, 40 days. Yes. There's an interval of 40 days, but that's a function of when it is under the rules possible for the ALJ to say he is disabled, because under the SSI rules, there are certain minimum amount of days. He can only go back to the date of the application. There has to be 30 days. But the record was a little different before the third ALJ, wasn't it? There are some additional records, which are records that wouldn't have been able to be put forward before because of the ongoing, continuing psychiatric treatment. But the fundamental thing that was relied upon was a 2007 analysis by his treating psychiatrist. And that was in front of the second ALJ. But that was one, that was only one visit. Generally, when we're talking about a treating physician, we give additional weight because of the longitudinal consideration for a treating physician. But that was just one visit. And one visit does not necessarily have the same gravitas. But, Your Honor, I think there's a couple of things. One, it is an opinion by a psychiatrist. It is an opinion that indicates an organic cause, whereas the contrary, the assessments made by the psychologist who wasn't treating are purely based on test results. So whether or not that was the proper person to be making the analysis and balancing. But you have somebody who has limited access to medical care who goes in, they see somebody, and what we see from at least going forward from that is that he goes and he consistently goes. He is being prescribed medications for psychosis, for antidepressant. Those are noted in that original. What do we do with the presumption of non-disability that arises from the first two findings of no disability? Well, Your Honor, we think, particularly in connection with the second finding, there was an implied reopening because the third ALJ was looking at the exact same evidence. Implied reopening? Yes, Your Honor. Which at least these need to be remanded to be harmonized. They don't have to be harmonized if the third decision is based on evidence that was not presented in the second decision. Well, it includes evidence that wasn't available at the time of the second decision, but it all runs from and is based upon that early decision by the psychiatrist at the beginning of 2007 that there was an organic disability, and he continues to seek and receive the treatment. So that by the time you do get the third ALJ, you have evidence that couldn't have been put forward in front of the second ALJ showing the continuity. But it simply could have been that the condition worsened over that period, and that worsening of condition was documented for the third ALJ in that documentation or the worsening had not manifested for the second ALJ. You know, with our review, the deference we give to the ALJ, how can we second-guess the ALJ's decision at this point? Your Honor, I respectfully think that the third decision doesn't support that because the third decision, well, yes, there are additional records that become available to that ALJ, which are able to reinforce the observations that were made back in 2007. He doesn't find that there is a worsening of condition. He said, I can't make a determination one way or the other prior to the date that the application was filed because it doesn't matter for SSI. But he is looking at that original 2007. His decision is based on the 2007 original assessment that was made. Scalia. Well, this is new and material evidence? It is both new and material, and it is a reopening, Your Honor, because It can't be both. It can't be both. The, I mean, what you have is the new and material evidence is you have the decision that is later, and under Luna we've argued that that at least requires us to get the remand. You have the continuing treatment records that were not things that could have been presented to the second ALJ. So the third decision is the one that gave your client benefits, right? Yes, Your Honor. All right. Perhaps we should hear from the government, and then we'll hear from you from rebuttal. We'll see what the government's response is. Thank you very much. Your argument is kind of innovative. Thank you, Your Honors. Brenda Pullen for the Commissioner of Social Security. And may it please the Court, I'd like to distinguish Luna first, which was raised in the plaintiff's reply brief and which I haven't had a chance to address. And then I'd like to just highlight a few points from my brief, which I think are determinative of this case. First of all, Luna, which came out in October of last fall, and which the claimant relies on heavily in his reply brief, is both factually and procedurally different. In that case, the parties actually agreed to remand. And the only question before this Court was of the proper remedy, whether it should go back for further proceedings or an award of benefits. And the Court agreed with the Commissioner that it needed further proceedings because, among other possibilities, there was the possibility that the claimant had presented different evidence, different medical evidence, to support her subsequent claim. And that would explain the different decisions. In this case, we know that there was different evidence that supported the subsequent decision because the claimant's representative submitted that evidence, some of which was from 2008 and 2009. So it was new and material. It was a different record that was before the third ALJ that did not pertain to the time period that was before the second ALJ. So it's new and material. Why don't you don't want to concede it's new and material? Why wouldn't you want to agree? You know, it could be new and material evidence, but that the claimant never presented to the agency before the second ALJ's decision. If that evidence was available at that time, the claimant offered no reason why they didn't present it to ALJ Ramsey, the decision at issue here. Is there some reason why the second ALJ did not credit the treating physician's opinion? Certainly. There were many reasons. Is that ordinarily true? When there's an initial evaluation by a treating physician and for which the claimant has stated, the purpose of which is for applying for benefits, then it commonly is given less weight by an ALJ. But it's given some weight. It was considered here and given some weight. Considered and decided that it wasn't controlling. And particularly in light of the fact that it rested almost completely on claimant's subjective statements from this one-time visit, which were otherwise properly described by the ALJ. But aren't there cases here in the Ninth Circuit that say that the opinion is not invalid because it looks at the claimant's subjective symptoms? No, that's true. That's true. Unfortunately, the argument about the weight given to the 2007 treating psychiatrist's opinion was not argued at all, was not raised at all as a substantive issue in the district court. So we did not ever have the opportunity to flesh out that argument. So you're saying the issue about the weight that was given to the treating physician's decision was weighed because it was not addressed in the district court? Yes, Your Honor. Thank you, Your Honor. In addition, I would like to contest two factual items that were raised by claimant's counsel. The first is about going back to 2001. That's simply incorrect. The decision at issue, ALJ Ramsey's decision, applies the presumption of continuing non-disability from the first ALJ decision. So we don't go back before 2003 in any event. And then with respect to the third decision, claimant's attorney posited that the third ALJ did not look back further than the onset date that he set because of the SSI application rules. SSI is not retroactive, so he could only have gotten benefits from the application date forward. But the decision itself, and this is at ER44, refutes that, where the third ALJ explicitly finds that reopening his prior Title II application or Title XVI applications was not warranted. So going back to the Title II application, the date for which he last qualified for Title II benefits was in June of 2004. It seems to imply that the ALJ considered whether to go back further than his SSI application. What about opposing counsel's argument that the third ALJ decision was an implicit reopening of the second ALJ decision? I would rely on the third ALJ's explicit statement that he is not reopening the second ALJ's decision. But isn't it a de facto opening, whether he said that or not? The problem with that argument is that there would be no administrative finality whatsoever. If there was any subsequent application or any subsequent grant, then you could always reopen anything back to the first-ever application. Well, not always, but if the facts indicate that case. Well, this is a not uncommon scenario where an individual would file serial applications. And the reason that the agency allows that is because medical conditions can worsen. Right. And wasn't there evidence that it worsened between 2005 and 2007 here? Not between 2005 and 2007. In 2006, the claimant first sought treatment for a mental health evaluation. But he apparently has abandoned the physical aspects of the case. But for mental health treatment, he had an initial evaluation in December 2006, first saw a psychiatrist in February of 2007, and then went back for one nurse follow-up appointment and was scheduled for medication management to continue on. What wasn't one of the problems with the second ALJ decision that he determined that the claimant didn't seek any medical relief? And isn't it true that if one has certain mental illnesses, that that's commonplace, that he wouldn't be seeking the medical attention that he or she would need? We don't have that kind of factual support in this case. Instead, we have a claimant alleging that he was so mentally incapacitated since a motor vehicle accident in 2001 that he was unable during that entire time to work. And he had, actually, repeated consultative psychological examinations by the same CE. So whereas he had a one-time treating psychiatrist, actually the CE in this case had seen him twice for two different applications. With those facts and the fact that he came into the clinic in December for the purpose of getting benefits, it sort of exhibits an awareness of the fact that he could get mental health treatment. He walked in and got some. It doesn't weigh in favor of supporting a kind of 91-5P mental impairment. So at first he was focusing on his physical disabilities in his efforts to get social security disability benefits. And then when that was unsuccessful, he turned to mental components. That's correct. And there was a different set of facts before the third ALJ. He continued to get mental health treatment, and the ALJ in 2009 recognized that and took the treating physician's opinion differently in light of that further evidence. It's entirely reasonable for two different fact finders with different sets of evidence before them to reach different conclusions, regardless of whether one piece of evidence was the same in both sets. Right. It was one piece of evidence plus for the third one. Correct. I understand your argument. Unless the Court has further specific questions. No. It appears not. Rebuttal. Thank you, Your Honor. There are just a couple of things I did want to take exception with. This is not a case of a claimant saying, well, I had a physical problem and now I have a mental problem. This is a matter of the ALJ's failure to take into account the mental problems that were on top of the physical. Well, it's the claimant's responsibility to prove his case. I mean, so that burden always lies with the claimant. It's not for the ALJ to frame. I understand. And, Your Honor, my real exception here was the suggestion that there was somehow some sort of a change, that he was doing one thing and now he's trying something else. That's not the case at all. It looks that way to me. Well, you have someone who's trying to work their way through the system who has limited education, who had a severe accident in 2001. To my knowledge, and I could be wrong on the record because I haven't gone and looked back, I don't believe he had any representation until the final application or the second, the Ramsey application. And the mental health issues were brought up at that time. They were rejected by ALJ, Ramsey, and I think improperly. Additionally, just as a matter of the record, there were, in fact, two consultations with the M.D. psychiatrist. The first one was in January of that year. If the Court goes back and looks at the administrative record, it will see that first is in January, where there was a certification by the M.D. of the psychiatric injury, and then it was followed up in February with the longer report. So this isn't just a single time. Additionally, I think that the Court, and I do think that the third ALJ found that there was a worsening, but it was a worsening not that occurred between 2007 and 2009, but exactly as the Court had pointed out. It started in 2005. You have a certain amount of mental disability that is identified by the C.E. back in 2005. By the time you get to 2007, you have an M.D. who's saying this is. Was there a claim for mental disability as well as physical by 2005, or did that come later? I know he was assessed as part of that original time, so I would assume that he did bring up certain issues related to his mental impairments. But you can't represent that he did. I cannot, standing here, make that representation. And that is, of course, also one of the problems with us having been rejected, the opportunity to supplement the record with the record from the first hearing, which was denied in the district court below. Those were records that we did try or that Mr. Sammis tried to have admitted in this case unsuccessfully. And I think that's it, Your Honor, unless the panel has other questions. It appears not. Thank you to both counsel. The case is submitted for decision by the court. That completes our calendar for the day and for the week. This court is adjourned.
judges: San Francisco, California